UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SELECTIVE INSURANCE COMPANY OF AMERICA,    :    Case No.:
                                           :
                        Plaintiff,         :    **COMPLAINT**
                                           :
        - against -                        :
                                           :
ENDURANCE AMERICAN INSURANCE COMPANY       :
and DESMAN INC.,                           :
                                           :
                        Defendants.        :
------------------------------------------------------------x

Plaintiff Selective Insurance Company of America ("Selective"), by its attorneys, Gunnercooke US LLP, as and for its complaint against defendants Endurance American Insurance Company ("Endurance") and Desman Inc. ("Desman"), alleges as follows:

## NATURE OF THE ACTION

1.  This is an action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and damages.

2.  Selective seeks a judicial declaration that it is not obligated to defend or indemnify Desman in connection with the action captioned *Laura Gray, as General Administratrix and Administratrix Ad Prosequendum of the Estate of Maximillian Gray-Barquero, Deceased and Laura Gray, Individually v. Rowan University, et al.*, Superior Court of New Jersey, Gloucester County, Docket No. GLO-L-1149-23 ("the Underlying Action") under a commercial general liability insurance policy it issued to Desman.

3.  Selective also seeks a judicial declaration that Endurance must defend Desman in the Underlying Action because, upon information and belief, the claims

against Desman are potentially covered under the professional liability policy Endurance issued to Desman.

4. Inasmuch as Selective has been defending Desman in the Underlying Action pursuant to a reservation of rights, and Desman's defense should instead have been handled under the Endurance Policy, Selective also seeks reimbursement of the costs it has incurred defending Desman since the date of tender to Endurance.

## THE PARTIES

5. Selective is a New Jersey corporation engaged in the insurance business with a principal place of business and administrative offices located in Branchville, New Jersey. Selective is authorized to transact business and has transacted business in New York.

6. Upon information and belief, Endurance is a Delaware corporation engaged in the insurance business with a principal place of business in New York, New York. Upon information and belief, Endurance is authorized to transact business and has transacted business in New York.

7. Upon information and belief, Desman is incorporated in Delaware with a principal place of business in New York, New York.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iii) the matter is between citizens of different states.

9. Venue is proper under 28 U.S.C. § 1391 because Endurance and/or Desman resides in this judicial district.

## THE UNDERLYING ACTION

10. In the Underlying Action, Laura Gray, as General Administratrix and Administratrix Ad Prosequendum of the Estate of Maximillian Gray-Barquero, Deceased and Laura Gray, Individually ("the Estate"), seeks damages because of injuries sustained by and the wrongful death of decedent Maximilian Gray-Barquero ("Decedent") resulting from his jumping from the upper level of the Redmond Parking Garage at Rowan University in Glassboro, New Jersey ("the Garage") on November 1, 2021.

11. Desman was named as a defendant in the Underlying Action's First Amended Premises Complaint, in which it is alleged, *inter alia,* that Desman and the other defendants "failed to properly design, construct, install, maintain, own, operate, control, inspect, supervise or otherwise discharge their responsibilities with respect to the aforesaid premises and the aforesaid parking facility." More specifically, it is alleged that Decedent "bypassed the inadequate fencing" and was "permitted the opportunity to engage in self-injurious behavior, and was caused to suffer injury and death due to the aforesaid dangerous condition of the parking garage premises and its facilities."

12. The Estate's Answers to Uniform Personal Injury Interrogatories, Form A, exchanged on or about June 21, 2024, describes the "act of negligence" giving rise to the Estate's claims as follows:

> In response to the prior suicides and/or attempted suicides, Defendant Rowan University hired Defendant, Progressive Fence and Railing and Defendant, Desman, to design and install a fence to prevent access to and/or the capacity of others to jump from the same roof. . . . The subject fence, designed by Defendant, Desman, installed by Defendant, Nexus Parking Systems, and approved by Defendant, Rowan University, and Defendant, Nexus Parking Systems, was negligently designed and/or installed and was further inadequate by failing to prevent access to and/or the capacity of others to reach the edge of the roof.

13. Information exchanged in the Underlying Action confirms that Desman's only role as respects the Garage involved providing a design drawing for anchor bolts to be used for affixing the alleged inadequate fencing that Decedent circumvented to jump from the Garage.

## THE SELECTIVE POLICY

14. Selective issued Policy No. S 2391236 to Desman with effective dates of November 1, 2021, to November 1, 2022 ("the Selective Policy").

15. The Selective Policy provides commercial general liability coverage as described in the following Insuring Agreement:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

16. The commercial general liability coverage provided under the Selective Policy is subject to the Exclusion - Engineers, Architects or Surveyors Professional Liability Endorsement, which states, in relevant part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports,

> > surveys, field orders, change orders or drawings and specifications; and
> >
> > 2. Supervisory, inspection, architectural or engineering activities.
> 
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", in involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

17. The Selective Policy also provides commercial umbrella liability coverage as described in the following Insuring Agreement:

> **1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

18. The commercial umbrella liability coverage provided under the Selective Policy is subject the following exclusion, which states that the insurance does not apply to:

> **16. Professional Services**

>"Bodily injury", "property damage" or "personal and advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:
>
>\* \* \*
>
>**b.** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
>**a.** Supervisory, inspection or engineering services;
>
>\* \* \*
>
>This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

19. The commercial umbrella liability coverage provided under the Selective Policy is also subject to the Exclusion - Engineers, Architects or Surveyors Professional Liability Endorsement, which states, in relevant part:

>This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
>Professional services include:
>
>1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
>2. Supervisory, inspection, architectural or engineering activities.
>
>This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", in involved the rendering of

or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", in involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

### SELECTIVE'S AGREEMENT TO DEFEND DESMAN SUBJECT TO A RESERVATION OF RIGHTS

20. On or about November 14, 2023, Desman requested that Selective defend and indemnify it in the Underlying Action under the terms of the Selective Policy.

21. Due to the broad and imprecise nature of the allegations made against Desman in the Underlying Action complaint, Selective agreed to provide Desman with a defense in the Underlying Action under the Selective Policy while reserving the right to disclaim coverage if the asserted claims did not qualify for coverage due to the policy's professional liability exclusions.

22. Selective also advised Desman to place its professional liability insurer on notice.

23. Selective has provided a defense to Desman in the Underlying Action pursuant to this reservation of rights since November 2023.

### THE ENDURANCE POLICY

24. Upon information and belief, Endurance issued Policy No. DPL30001379303 to Desman, a Design Professionals Liability Insurance Policy with effective dates of December 3, 2022, to December 3, 2023 ("the Endurance Policy").

25. Upon information and belief, the Insuring Agreement for the Design Professionals Liability coverage under the Endurance Policy states, in relevant part, that:

> the Insurer shall pay **Loss** resulting from any **Claim** first made against an **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, and reported to the Insurer in writing during the **Policy Period,** or any applicable Extended Reporting Period, for any:
>
> 1. **Design Professionals Wrongful Act** that first takes place; or
>
> 2. **Pollution Conditions** arising solely out of a **Design Professionals Wrongful Act,** provided such **Design Professionals Wrongful Act** first takes place;
>
> on or after the **Retroactive Date** and before the end of the **Policy Period.**

26. Upon information and belief, the Endurance Policy includes the following provision:

> VI. DEFENSE, SETTLEMENT, AND COOPERATION
>
> A. Defense and Settlement of Claims
>
> The Insurer shall have the right and the duty to select, subject to the **Insured's** consent, which shall not be unreasonably withheld, defense counsel to act on behalf of an **Insured** in investigating, defending, settling, or appealing **Claims**, even if any of the allegations of the **Claim** are groundless, false, or fraudulent.

27. Upon information and belief, the Endurance Policy defines "Loss" to mean: "**Damages** and **Claim Expenses.**"

28. Upon information and belief, the Endurance Policy defines "Damages" to mean: "those amounts an **Insured** is legally obligated to pay on account of a **Claim,** including compensatory sums, monetary judgments, or settlements, costs and attorneys' fees awarded pursuant to a covered judgment, punitive, exemplary, or multiple damages, pre-judgment and post-judgment interest, and **Cleanup Costs**."

29. Upon information and belief, the Endurance Policy defines "Claim Expenses" to mean:

> 1. reasonable fees charged by any defense counsel in investigating, defending, settling, or appealing **Claims**; and
>
> 2. all other reasonable fees, costs, and expenses resulting from the investigation and defense of a **Claim,** including experts' fees and premiums for appeal, attachment, or similar bonds, provided that the Insurer has no obligation to furnish any such bonds, incurred by the Insurer or by the **Insured** with the written consent of the Insurer, which shall not be unreasonably withheld.
>
> **Claim Expenses** shall not include any compensation of any employee or officer of the **Company,** any overhead expenses of the **Company,** any supervisory or other counsel retained by an **Insured,** or any amount incurred by an **Insured** in any matter that is not at that time a **Claim.** The determination by the Insurer as to the reasonableness of **Claim Expenses** shall be binding on the **Insured**.

30. Upon information and belief, the Endurance Policy defines "Design Professionals Wrongful Act" to mean:

> any act, error, omission, misstatement, misleading statement, neglect, or breach of duty actually or allegedly committed or attempted by an **Insured,** or by any other person or entity for whose acts the **Company** is legally liable, solely in the performance of or failure to perform **Design Professional Services** in accordance with the standard of care legally required or reasonably expected under the circumstances.

31. Upon information and belief, the Endurance Policy defines "Design Professional Services" to mean:

> only those services the **Insured** is qualified to perform for others in the **Insured's** capacity as an architect, engineer, land surveyor, landscape architect, construction manager, interior designer, environmental consultant, scientist, land planner, or space planner; or as an expert witness, technical consultant, or LEED Certification Consultant with respect to

the foregoing listed services. **Design Professional Services** also includes the foregoing listed services when rendered pro bono for others or in the course of performing a professional peer review for others.

32. Upon information and belief, the Retroactive Date for the Design Professional Liability Coverage under the Endurance Policy is "Full Prior Acts."

## THE TENDER TO ENDURANCE

33. Upon information and belief, Desman also requested that Endurance defend and indemnify Desman in the Underlying Action under the Endurance Policy.

34. Upon information and belief, Endurance acknowledged Desman's request for coverage and assigned claim number 10716765 to the matter.

35. Between approximately November 2023 and June 2024, Selective and representatives of Desman attempted to obtain a response from Endurance to Desman's coverage request.

36. After these efforts failed to elicit a response from Endurance, Selective, through its coverage counsel, Coughlin Midlige & Garland, by letter dated December 13, 2024, to Sompo International, Endurance's parent company, demanded that Endurance take over from Selective Desman's defense in the Underlying Action because evidence established that the claims against Desman involved Desman's rendering of professional services excluded under the Selective Policy and covered under the Endurance Policy.

37. By responsive letter dated March 21, 2025, Endurance, through its coverage counsel, Clyde & Co., rejected Selective's tender of Desman's defense in the Underlying Action, claiming that, although certain claims against Desman are potentially covered under the Endurance Policy, certain others are potentially covered under the Selective Policy, and that the Endurance Policy's "other insurance" provisions establish that

Desman's coverage under the Selective Policy is primary to its coverage under the Endurance Policy, thus requiring that Selective defend Desman without Endurance's participation.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment that Selective has no duty to Defend or Indemnify Desman in the Underlying Action)

38. Selective repeats and realleges each and every allegation set forth in Paragraphs 1-37 as if fully set forth herein.

39. The allegations against Desman in the Underlying Action, coupled with the information exchanged in discovery, confirm that any damages Desman may be legally liable to pay in the Underlying Action arose out of the rendering of or failure to render professional services by Desman or any engineer, architect or surveyor who was either employed by Desman or performing work on Desman's capacity and are thus excluded from coverage under the Selective Policy.

40. Selective is thus entitled to a judgment declaring it has no duty to defend or indemnify Desman in the Underlying Action under the Selective Policy.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment Against Endurance – Duty to Defend)

41. Selective repeats and realleges each and every allegation set forth in Paragraphs 1-40 as if fully set forth herein.

42. The Endurance Policy potentially provides coverage to Desman in connection with the allegations made against it in the Underlying Action because it seeks "Damages" against Desman for a "Design Professionals Wrongful Act" that first took place on or after the Retroactive Date and before the end of the policy period, as the Endurance Policy defines the quoted terms.

43. Upon information and belief, Endurance was provided with the Underlying Action complaint and information regarding Desman's scope of work and services at the Garage at or about the time Desman requested coverage under the Endurance Policy, no later than June 2024.

44. Selective is thus entitled to a judgment declaring that Endurance has a duty to defend Desman in the Underlying Action under the Endurance Policy.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment – Reimbursement of Defense Costs)

45. Selective repeats and realleges each and every allegation set forth in Paragraphs 1-44 as if fully set forth herein.

46. For the reasons stated above, the claims against Desman in the Underlying Action are potentially covered under the Endurance Policy and, upon exchange of information clarifying the nature of the Estate's claims against Desman and confirming the nature of Desman's work as respects the Garage, Selective's duty to defend Desman in the Underlying Action ceased.

47. Upon this cessation of Selective's duty to defend Desman in the Underlying Action, Desman's defense in the Underlying Action should properly have been handled as required under the Endurance Policy and should not have been paid for by Selective.

48. Endurance's improper refusal to acknowledge that Desman's defense should at that point have been handled under the Endurance Policy rather than under the Selective Policy unjustly enriched Endurance and, to the extent of any applicable self-insured retention under the Endurance Policy, Desman at Selective's expense.

49. Selective is thus entitled to recover from Endurance and/or Desman the costs it incurred and continues to incur defending Desman in the Underlying Action from the date Desman's defense in the Underlying Action was tendered to Endurance.

**WHEREFORE**, Selective requests that this Court enter judgment in its favor as follows:

a. On the First Cause of Action, declaring that Selective has no duty to defend or indemnify Desman in the Underlying Action;

b. On the Second Cause of Action, declaring that Endurance has a duty to defend Desman in the Underlying Action under the Endurance Policy;

c. On the Third Cause of Action, awarding Selective the amount of its costs incurred defending Desman in the Underlying Action since the date Desman's defense in the Underlying Action was tendered to Endurance; and

d. Such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 27, 2025